PER CURIAM.
Gayle Rogers, doing business as Gayle Rogers & Sons Gravel Company, brought suit against Labarama, Inc., seeking to recover the balance due on a contract between plaintiff and defendant under which plaintiff agreed to construct a dredge boat with certain attached equipment for a total consideration of $10,500, payable $2,000 on delivery to the job site, $4,000 when the dredge boat and equipment was producing gravel, and $4,500 balance to be paid in equal quarterly payments thereafter, without interest. Plaintiff alleges he constructed the dredge boat according to specifications and delivered it to the site designated and set the same in operation, and that the defendant made the first two payments of $2,000 and $4,000 and also made three other payments on the contract price as follows: $1075 due on June 10, 1967, paid by defendant on July 14, 1967; $1141 due on September 10, 1967, paid on November 13, 1967; and $1142 due December 10, 1967, paid on January 4, 1968. This left a final payment of $1142 which was due March 10, 1968. Suit was filed April 22, 1968.
Defendant filed an answer and recon-ventional demand on June 12, 1968, admitting the terms of the agreement and the delivery of a dredge boat, but denying that the equipment ever produced gravel in accordance with the contract, and after itemizing its alleged defects prayed for damages in the amount of $9,490.
The matter was tried on January 29, 1969, and held open for the taking of depositions and filing of briefs.
*349 Counsel for plaintiff subsequently filed a peremptory exception of prescription to the reconventional demand of defendant on the grounds that said reconvention was filed more than one year after the date of the sale, and said reconventional demand being one for rescission or reduction of the price by reason of redhibitory vices, the same was prescribed by the prescription of one year.
For written reasons assigned, judgment was rendered June 5, 1969, read and signed the following day, awarding plaintiff the sum of $1,142, with legal interest, and rejecting the demands of the defendant-reconvenor, Labarama, Inc., from which judgment defendant and reconvenor has appealed.
The appellant urges four specifications of error, to-wit: (1) The trial Court erred in finding the gravel barge in good working condition; (2) the trial Court erred in failing to read or consider the testimony of Malcolm Wright, III; (3) the trial Court erred in failing to rule on re-conventional demand; and (4) the trial Court erred in failing to award damages in reconventional demand.
Before discussing these specifications of error, the question of the plea of prescription filed by plaintiff should be considered. The basis for the plea of prescription was that the reconventional demand was filed more than one year after the date of the sale, and said reconventional demand, being one for rescission or reduction of the price by reason of redhibitory action, was prescribed by the prescription of one year. The trial Judge correctly held:
“We believe that had this been an independent action of redhibition filed by Labarama, Inc. against Rogers, prescription would have run, but when it is asserted, as is the case here, in defense of an action to recover a portion of the agreed price prescription does not run.”
This statement of the law by the trial Judge is in accordance with both statutory law and the jurisprudence. LSA-C.C.P. art. 424 reads as follows:
“A person who has a right to enforce an obligation also has a right to use his cause of action as a defense. A prescribed obligation may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.”
The jurisprudence in this regard was set forth by this Court in the case of Charter Company v. Mercante, 186 So.2d 430, as follows:
“That appellant may .assert alleged redhibitory vices in defense of plaintiff’s claim is clear beyond all doubt. It has been repeatedly held that, under the doctrine ‘quae temporalia sunt ad agendum, perpetua sunt ad excepiendum,’ a purchaser may urge vices and defects in the merchandise sold in defense of a vendor’s action for the purchase price •thereof, notwithstanding the action of redhibition has prescribed. J. B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693; Capella v. Taulli, La.App., 53 So.2d 271.”
See also Continental-Emsco Co. v. D & D Drilling Co., La.App., 201 So.2d 873. Therefore, there is no question but what defendant’s right to reconvene was not barred by the prescription of one year.
The record shows that the dredge boat or gravel boat purchased by Labarama from plaintiff was one that was at the time of the purchase being operated by the plaintiff, but the barge to which the equipment was attached was a new barge built by the plaintiff for defendant company.
The contract in question was without warranty. The record shows there had been an attempt at first to get Mr. Rogers to agree to a warranty clause but he refused.
At the time of the trial one Floyd J. Baham testified that he was an employee of the defendant company for two months, *350 during which time the gravel boat in question was being built. He was sent to Mr. Rogers’ pit where the construction was in process to check out the boat and all equipment and to make certain that it was all delivered to the Labarama pit. He testified that after it was delivered to the La-barama pit it was operating properly; he had checked it out carefully and the only thing he found was that the generator was not charging but he said that this fact was known by Mr. Edwards, one of the owners of the defendant company, at the time of the purchase.
Wilbert Pierre testified that he was a dredge operator; that he was employed by Mr. Rogers at the time of the construction of the dredge boat and at the time it was transferred to and installed in the Labarama pit; that he later was employed by Labarama for about three months; that he pumped the same boat before Labarama bought it and after the purchase; and that it was working properly.
Albert Pierre, Wilbert Pierre’s brother, testified that he had at one time worked for Mr. Rogers but was not employed by him at the time the gravel boat was delivered to Labarama. He later worked for Labarama. He testified he had accompanied his brother Wilbert to the Laba-rama pit where the boat was operating and saw the boat operating correctly..
The bulk of the testimony of the witnesses was to the effect that while the gravel barge did experience some slight difficulties, it did work properly. The record seems clear that it was employees of Labarama who came to inspect the boat and who reported back to Mr. Edwards and Mr. Wright of Labarama that the boat was satisfactory.
Mr. Ottis Prine testified on behalf of the defendant company. He worked for Labarama at various times, including the period from March 14, 1967 to April 13, 1967. He testified that there was a plate across the suction pipe which prevented the pump from working properly and that after it was removed gravel was produced in satisfactory quantity. He also testified that one day the braces between the two sections of the barge came loose and he put them back together with a welding machine using the same metal. He stated that after he removed the plate across the suction pipe the boat had worked quite satisfactorily at the Labarama pit on Mr. Wright’s property, called the Wright Pit, and also at the Tycer Pit to which it was later moved.
Defendant’s brief shows that the recon-ventional demand is based upon the fact that the barge was improperly working for a period of six to eight weeks after the barge was delivered, and states that after repairs were made it worked properly. However, defendant’s case is weakened by the fact that while it may have been during that six or eight week period of time in March and April of 1967 that the barge was not working properly, nevertheless the defendant company did continue to make payments to plaintiff on July 14, 1967, November 13, 1967, and January 4, 1968, long after the repairs sought by defendant were completed. In fact defendant’s brief points out that during the period of March 11, 1967 through April 27, 1967, not much gravel was produced, but during the period April 27, 1967 through June 28, •1967, much more gravel was produced. If the barge was defective it does not seem reasonable that the defendant would have made the payments of July 14, 1967, November 13, 1967, and January 4, 1968, especially in view of the contention of defendant that its losses occurred basically during that six to eight week period in March and April of 1967. In discussing the testimony of Wilbert and Albert Pierre defendant shows that they worked a period of approximately from June 15 through August 23, 1967, which, according to defendant, was after the repairs were made, which repairs were the basis for the recon-ventional demand.
Mr. Rogers, of course, denies that the barge was not properly made. He states *351 that when the barge was delivered there was no plate over the suction pipe, as testified by Mr. Prine, but merely a bolt through it which kept large logs from going through. He also testified that the main problem was not with the barge but was with the pit located behind Mr. Wright’s property, together with the fact that the owners of the defendant company were very inexperienced in the gravel business. Some credence is given to his testimony by the fact that the barge was moved sometime in July to another pit where apparently the operation was more successful. Regarding his testimony as to the defendants being inexperienced, one of the owners, Mr. Wright, admitted this in his deposition.
It appears from the record that after the barge was delivered Mr. Rogers’ obligation was over except that he had agreed to help the owners of defendant company with problems that they as inexperienced gravel operators might run into in their business rather than in devoting a lot of time to checking the operations of the barge itself.
It was admitted that the generator was not working at the time of delivery. Mr. Rogers testified that he told them the generator was not charging at the time he delivered the barge and that it needed a set of brushes which would cost about $1.50. Apparently defendants never got the brushes, for what reason is not clear, but they repeatedly spent sums of money getting new batteries. However, this item would not in any sense indicate that plaintiff had voided the contract.
Defendant and plaintiff in reconvention strongly objected to the fact that the trial Judge apparently failed to read or consider the testimony of Mr. Malcolm Wright, III, which was taken by deposition. It is alleged that the court’s reasons for judgment make no reference to the testimony óf Mr. Wright and that an examination of the record reveals that at the time of the writing of defendant’s brief the deposition was still sealed and, therefore, had not been considered by the Court. We cannot determine whether or not the trial Judge read a copy of Mr. Wright’s deposition, but the original deposition in the record before this court was sealed, and was opened by this Court.
This Court has examined the testimony of Mr. Wright and we do not feel that it in any way substantiates the claims of the defendant for a reconventional demand. Even though defendant’s brief talks about Mr. Wright’s testimony regarding the loss of business and states there was no defense and no rebuttal, Mr. Wright’s testimony in this regard is most indefinite. He was asked if he had any personal knowledge of any contracts or jobs or sales that the corporation lost (which loss was valued in the reconventional demand at $8,000), and he said “only one” and that was to Crown-Zellerbach which was in an “indeterminate amount.” While he stated that someone said they could take all the production they could get, he also stated that party was only hauling with one truck. There is no other evidence presented by Mr. Wright as to the loss of business. Regarding the expenses incurred in connection with the repairs, as alleged in the recon-ventional demand, defendant’s brief limits the time in which these expenses were incurred to a period of six to eight weeks, but Mr. Wright’s testimony concerning the expenses shows that the invoices in question covered a much greater period of time and he specifically testified that he could not with any degree of accuracy identify which were costs and which were a part of the operating expenses. Mr. Wright was asked to identify invoices in the amounts of $97.10, $188.70, $269.75, $617.31, and $86.86. He indicated the invoice for $97.10 did not pertain to the cost for repairs; the one for $188.70 was to replace an impeller in the pump (no date was given for that); the one for $269.75 he said did not pertain to the cost for repairs; *352 neither did the one for $617.31; and then he did identify an item for $16.00 which he said would pertain to the repairs. The only items which he identified with any degree of accuracy were those for batteries. As mentioned above, however, there is some question as to whether or not this loss was the result of the defendant’s own failure, that is, in not heeding Mr. Rogers’ statement that new generator brushes were needed.
Mr. Wright testified that at the time of the trial he had no further ownership in the defendant corporation but that he had been the President in February of 1967 at the time of the negotiations concerning the barge, and he kept the books of the corporation. When he was questioned regarding certain invoices and how they were set up on his books — whether as operating expenses or repairs, he was asked:
“Q. You could not identify any particular item on any of these invoices from Tangi Industrial Sales, Inc. even though some of them might have been for repairs?”
and he testified as follows:
“A. That is right. I would say that a number, quite a number because in the books of the corporation, I made an effort to capitalize for tax purposes as much of cost of repair as I could, rather than expenses in the first year of operation and in doing this we developed a considerable capitalization on the pump barge.
Q. And what was the total of that ?
A. This is recollection, around sixteen or seventeen thousand dollars as to compare with the original cost of the contract price. Now, some of that was due to repair and some of it was due to additional work that was done, so not all of that increase could be laid to problems. Some of it was done for improvement, you might say.
Q. How much — do you recall how much was for repairs ?
A. No, that is what I say, it would be awfully hard to identify right now.”
It is, therefore, quite clear that Mr. Wright’s testimony throws very little light on what additional expenses the defendant incurred as the result of Mr. Rogers’ alleged negligence in the construction of the barge, and in fact his testimony is so speculative that this Court cannot consider it.
It is the opinion of this Court that the defendant and plaintiff in reconvention has completely failed to prove its re-conventional demand, especially in view of the testimony of all of the witnesses concerning the construction of the barge, the fact that the owners of defendant company were inexperienced, the testimony concerning the difficulty with the quality and quantity of gravel at the Wright Pit, and particularly in view of the fact that defendant made quarterly payments some eight months after delivery of the barge and long after the time in which defendant’s brief states the real losses occurred and the real repairs were made.
For the above and foregoing reasons the judgment of the lower Court is affirmed, all costs, including the cost of this appeal, to be borne by the appellant.
Affirmed.